**BAYLIS BROTHERS CO., etc.**

v.

**UNITED STATES.**

**C.D. 4611; Court Nos. 67/28752, etc.**

United States Customs Court.
Decided Sept. 25, 1975.

Sharretts, Paley, Carter & Blauvelt, New York City (Patrick D. Gill, New York City, of counsel), for plaintiffs.

Rex E. Lee, Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial attorney), for defendant.

FORD, Judge:

Pursuant to rule 8.2 of the rules of the court, plaintiffs have moved for summary judgment. Defendant has filed opposition thereto on the ground the court lacks jurisdiction since the parties instituting the action are not included in section 514 of the Tariff Act of 1930 as being entitled to file.

There is no issue as to the merits of these cases which have previously been determined in *United States v. Baylis Brothers Co.*, 59 CCPA 9, C.A.D. 1026, 451 F.2d 643, 59 CCPA 9, C.A.D. 1026 (1971). Defendant has conceded in its answer that the fabric components of the dress fronts are entitled to the allowance prescribed by item 807.00, TSUS. Accordingly, the duty on the imported merchandise should be based upon the full value less the cost or value of the United States components.

The sole issue presented is the question of jurisdiction of the court to determine this matter based upon the alleged

lack of authority of the plaintiffs to file protests pursuant to the provisions of section 514 of the Tariff Act of 1930 which reads as follows:

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation. [19 U.S.C.A. § 1514.]

The essential facts relating to the factual situation involved in the cases before the court are set forth in the affidavit of Eileen Guenther, the owner of M. A. Graser-Rothe, the customhouse broker making the entries, which is attached as exhibit 1 to the motion for summary judgment. The affidavit reads as follows:

EILEEN GUENTHER, being duly sworn, deposes and says:

1. I am the owner and licensed customhouse broker of M. A. Graser-Rothe.

2. I have been affiliated with M. A. Graser-Rothe in that capacity since 1957.

3. During the period 1965 through 1973, M. A. Graser-Rothe, a licensed customhouse broker, has made numerous entries for the account of Baylis Brothers Inc., also known as Baylis Brothers Company.

4. In most, if not all, of these entries, M. A. Graser-Rothe appears as importer of record and nominal consignee of the imported merchandise in which entry was made on behalf of Baylis Brothers Inc.

5. In all these transactions, the merchandise was ultimately consigned to Baylis Brothers Inc.

6. I am familiar with the circumstances surrounding the entries.

7. In instances where no superceding [sic] bond or owner's declaration was filed in connection with the entries, M. A. Graser-Rothe paid the duties and, in turn, was reimbursed for the payment for the duties by Baylis Brothers Inc.

8. We acknowledge that Baylis Brothers Inc. is the real party-in-interest and ultimate consignee in a commercial sense in all instances where we have acted as customs broker for Baylis Brothers Inc., irrespec-

tive of whether an owner's declaration or superceding [sic] bond was filed.

9. In all instances mentioned in paragraph 7 above, Baylis Brothers Inc. has acted as agent for M. A. Graser-Rothe in filing protests pursuant to Section 514 of the Tariff Act of 1930, as amended.

10. M. A. Graser-Rothe has ratified the actions of Baylis Brothers Inc. in filing protests in connection with these entries.

11. At all times, M. A. Graser-Rothe and Baylis Brothers Inc. have been in agreement as to the filing of protests by Baylis Brothers Inc.

12. Upon refund of any duties resulting from a successful prosecution of this action, M. A. Graser-Rothe would in turn forward said refunds to Baylis Brothers Inc.

In addition, the following summary of facts agreed upon by the parties in their respective complaint, answer, reply, and memorandum were set forth in defendant's opposition to the motion for summary judgment:

1. The merchandise, consisting of smocked dress fronts, is the same in all material respects as that in *United States v. Baylis Brothers Co.,* 59 CCPA 9, C.A.D. 1926, 451 F.2d 643 (1971), as modified, which was therein held dutiable under item 807.00, TSUS, upon the full value of the imported article less the cost or value of the American component of such article (complaint, para. 11, 20; answer, para. 11, 20).

2. The importations, consisting of fabric pieces, the product of the United States, and thread, not a product of the United States, were appraised together as an entirety, without a separate value having been returned for the fabric pieces (answer, para. 26; reply, para. 26).

3. In the absence of the finding of separate values for the fabric pieces, there were no valid appraisements (answer, para. 27; reply, para. 27).

4. If the protests were legally filed, they are premature as the liquidations are invalid in the absence of valid appraisements (answer, para. 28; reply, para. 28).

5. The various protests in this consolidated action were filed by the Baylis Brothers Co., Baylis Brothers Inc. and Baylis Brothers Co., Inc. (complaint, preamble).

6. M. A. Graser-Rothe made entry (memorandum in support of plaintiff's motion for summary judgment, p. 1).

7. M. A. Graser-Rothe is shown in the carrier's certificates filed in connection with the entries herein as the owner or consignee for the purposes of section 484(h) of the Tariff Act of 1930, 19 U.S.C. 1484(h) (answer, para. 21; reply, para. 21).

8. M. A. Graser-Rothe is the importer of record, as well as the owner and consignee of the instant merchandise, pursuant to section 483 of the Tariff Act of 1930, 19 U.S.C. 1483 (answer, para. 22; reply, para. 22).

9. No owner's declaration or superseding bond has been filed pursuant to section 485(d) of the Tariff Act of 1930, 19 U.S.C. 1485(d) (answer, para. 23; memorandum, *supra* at 1).

■■ Based upon the foregoing and the principles set forth in *United States v. Wedemann & Godknecht, Inc., a/c Atwater Throwing Co., et al.,* 515 F.2d 1145, 62 CCPA ——, C.A.D. 1151 (1957), and for the reasons set forth below, the court finds the cases to be properly before it. In view of the fact that the appraisements herein are void, the liquidations are premature and, accordingly, void. It naturally follows that the cases have been prematurely filed and are dismissed.

Judge Rich, in *Wedemann & Godknecht, supra,* made the following observations:

\* \* \* The only question that remains is whether there was clear er-

ror in the lower court's conclusion that appellee, in filing the protest, *acted as* the agent of the consignee. While there is no evidence of specific appointment of Wedemann & Godknecht, Inc., to act as agent of Allen Forwarding Co. in filing protests, it would have been a work of supererogation to have made such an appointment in view of the relationship of these customs brokers to each other and to the business of Farbenfabriken Bayer and its domestic customers. Those relationships were such as to reduce to an absurdity the strange statement in the Government's brief that "Wedemann & Godknecht, Inc. was a stranger to the entry transaction * * *." On the contrary, the facts demonstrate that Wedemann & Godknecht, Inc., was in the driver's seat throughout, selecting out-port brokers to represent it and its client, employing lawyers to file protests as necessary, and generally looking after the customs business of FFB. Allen Forwarding Co. did not have to appoint it to file protests as its agent because Wedemann & Godknecht, Inc., was making the decisions, and when it filed the protests on the Philadelphia importations it must have done so as the agent of "the person paying such charge." Although it did so without specific request or appointment, we think the "ratification" by Allen Forwarding Co. cleared up that question, both confirming the agency relationship *within the meaning of section* 514 and adopting the action taken as its own.

We do not regard this as a technical question of agency law in the usual sense. Agency law as such is primarily concerned with contractual rights and liabilities, vicarious tort liabilities, etc.; what we are really concerned with here is customs law procedures, court pleadings, and the proper naming of parties in compliance with a procedural statute. The right at stake is the right to a judicial review, on which hangs the right to recover excess duty admittedly paid. In *Wilmington Shipping Co. v. United States,* 52 CCPA 76, 79 C.A.D. 861 (1965), we expressed approval of the proposition stated in *Lewis' Sutherland on Statutory Construction,* Sec. 717, that statutes giving the right of appeal are to be liberally construed in furtherance of justice. In *Eaton Mfg. Co. v. United States,* 60 CCPA 23, C. A.D. 1076, 469 F.2d 1098 (1972), in which the sufficiency of a protest filed pursuant to section 514 was involved, we said, 60 CCPA at 30, that "denial of jurisdiction for insufficiency of protest is a severe action which should be taken only sparingly" and construed the protest liberally. In spite of some uncertainty, we held it sufficient because it did not "impose any undue burden on the collector." In *Wells, Fargo & Co. v. United States,* 7 Ct.Cust.Appls. 346, T.D. 36903 (1916), the predecessor of this court took a liberal view of the establishment of an agency relationship in the matter of filing a protest by Wells, Fargo as a customhouse broker for an owner. The court said (pp. 351–52):

> This is not a case which involves the binding force and effect of a contract made by an agent, but rather is a question of practice or procedure under a statute providing how an action may be instituted.

In light of these principles and precedents and on the particular facts of this case we find no error in the decision below. The record makes it clear that the Government was aware at all times that any refunds of excess duty paid were to go to Allen Forwarding Co., and thus did not suffer additional administrative burden from the manner in which these protests were filed.

I also note in the concurring opinion by Judge Miller the following, which is applicable to the case at bar:

> The courts have consistently permitted the owner-importer of the mer-

chandise or his agent to protest the decision of the collector, even though such owner-importer or agent (or both) was not so identified in the entry papers, upon proof of identity at the trial. See *United States v. Hannevig,* 10 Ct.Cust.App. 124, T.D. 38384 (1920); *Adolco Trading Co. v. United States,* 71 Cust.Ct. 145, C.D. 4487 (1973); *Great Lakes Foundry Sand Co. v. United States,* 15 Cust.Ct. 256, Abs. 50442 (1945); *Bernstein v. United States,* 59 Treas.Dec. 870, T.D. 44800 (Cust.Ct.1931); *Davies, Turner & Co. v. United States,* 58 Treas.Dec. 1216, Abs. 14407 (Cust.Ct.1930); *Gray v. Lawrence,* 10 F.Cas. 1031 (No. 5,722) (C.C.S.D.N.Y.1853). The import of these decisions is that, for purposes of section 514, a protest may be filed by one who proves that he is the real party in interest or his agent. Thus, in *Bernstein,* supra, the concurring opinion quoted the following portion of Chief Justice Taney's opinion in *Mason v. Kane,* 16 F.Cas. 1044 (No. 9,241) (C.C.D.Md.1851):

> We see no inconvenience that can arise to the collector, or the public, by permitting the owner to maintain the suit in his own name, instead of suing in the name of his agent or consignee; the payment by the consignee, is the payment by the principal; and the protest of the consignee, the protest of the principal, if he thinks proper to adopt it. We think the practice in some of the circuits has sanctioned suits by the foreign owner, in cases of this description; and as this practice is consistent with a fair construction of the act of 1845, and no injustice or inconvenience can arise from it, the court are of opinion, that this objection must be overruled.

By the same token Baylis Brothers Co., etc., in the instant case, are the actual importers who, in fact, hired and directed the entry of the merchandise through their broker, M. A. Graser-Rothe. The affidavit of the broker in the instant case ratifies the action of filing the protests as in the *Wedemann* case, *supra.* The government was and is aware of this fact and would not suffer any administrative burden.

In view of the foregoing, I find the cases to be properly before the court and find they have been filed prematurely and are hereby dismissed for appropriate administrative action not inconsistent with this decision.

Plaintiffs' motion for summary judgment is, therefore, granted. Judgment will be entered accordingly.