CHENG SHIN RUBBER INDUSTRY
COMPANY, LTD., Plaintiff,

v.

UNITED STATES, Defendant,

Carlisle Tire and Rubber Co., Intervenor.

Court No. 82–3–00332.

United States Court of International
Trade.

Nov. 19, 1982.

Kaplan Russin & Vecchi, Dennis James, Jr. and Kathleen F. Patterson, Washington, D.C., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Washington, D.C., Director, Commercial Litigation Branch (Sheila N. Ziff, New York City, on the brief), for defendant.

Eugene L. Stewart, Washington, D.C., for intervenor.

*Opinion and Order*

MALETZ, Judge:

This matter is before the court on defendant's motion to dismiss the complaint. Plaintiff Cheng Shin Rubber Industry Company, Ltd. (Cheng Shin) is a Taiwanese manufacturer of bicycle tires and tubes subject to a countervailing duty order issued on February 17, 1982. 47 Fed.Reg. 6913. In the present action Cheng Shin challenges the final affirmative determination by the International Trade Administration of the Department of Commerce (ITA) which gave rise to the countervailing duty order.

Defendant has moved to dismiss Cheng Shin's complaint on three grounds: (1) lack of subject matter jurisdiction; (2) lack of standing; and (3) failure to state a claim upon which relief may be granted. For the

reasons set out below, the court concludes that since the ITA's determination was governed by the law in effect prior to enactment of the Trade Agreements Act of 1979, Cheng Shin, as a foreign manufacturer and exporter, lacks standing to challenge the ITA's countervailing duty determination.

## Background

This action had its genesis in an American manufacturer's petition filed by intervenor Carlisle Tire and Rubber Company (Carlisle), a domestic manufacturer of bicycle tires and tubes, pursuant to 19 U.S.C. § 1516(a) (1976). Carlisle sought the imposition of countervailing duties on Taiwanese bicycle tires and tubes. Following the filing of Carlisle's section 1516 petition, a notice of final countervailing duty determination was published in the Federal Register on January 8, 1979. 44 Fed.Reg. 1815. That notice stated that the Department of the Treasury (Treasury) (the agency responsible for administration of the countervailing duty laws prior to enactment of the Trade Agreements Act of 1979) had determined that benefits had been paid by the Government of Taiwan on the manufacture and exportation of bicycle tires and tubes. The notice went on to conclude, however, that those benefits involved an aggregate amount considered to be de minimis and that, therefore, no bounty or grant was being paid or bestowed, directly or indirectly, within the meaning of section 303 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1303 (1976).

On March 8, 1979, Carlisle filed suit in this court challenging this determination. The court held that while the de minimis doctrine was applicable to cases arising under the countervailing duty statute, it concluded that the action should be remanded for "further inquiries as may be needed to determine the *ad valorem* benefit provided the Taiwanese bicycle tire and tube manufacturers by the Government of Taiwan." *Carlisle Tire & Rubber Co. v. United States,* 1 CIT 352, ——, 517 F.Supp. 704, 709 (1981). Accordingly, the action was stayed, the Treasury determination vacated, and the

case remanded with the direction that a redetermination "be made in accordance with the countervailing duty law in effect prior to January 1, 1980. See Pub.L. 96–39, Title X, §§ 1002(b)(1)(B) and (2), 93 Stat. 307." *Id.*

Pursuant to the remand, the countervailing duty investigation was reopened in order to obtain the additional information required by the court. On the basis of information received during the reopened investigation, defendant submitted a notice of redetermination to the court. This notice stated that bicycle tires and tubes manufactured by Cheng Shin received bounties or grants within the meaning of 19 U.S.C. § 1303 (1976) in the net amount of 0.893 percent *ad valorem.* 46 Fed.Reg. 53201–3 (1981).

On November 16, 1981, Carlisle advised the court that it acquiesced in this redetermination. On November 17, 1981, the court affirmed the results of this redetermination and directed the Secretary of Commerce to issue a countervailing duty order with respect to bicycle tires and tubes manufactured by Cheng Shin. 2 CIT——, Slip Op. 81–104.

On February 17, 1982, the ITA published its countervailing duty order, directing the Customs Service to collect a cash deposit of estimated countervailing duties of 0.893 percent *ad valorem* on Cheng Shin's merchandise entered or withdrawn from warehouse for consumption on or after October 28, 1981. 47 Fed.Reg. 6913–4. On April 2, 1982 Cheng Shin filed this action contesting this redetermination.

## Opinion

Against this background we turn to a consideration of the jurisdictional allegations in Cheng Shin's complaint. Cheng Shin asserts two grounds for this court's jurisdiction. The first rests on the countervailing duty law as amended by the Trade Agreements Act of 1979. The second is based on the countervailing duty law as it existed prior to the enactment of the Trade Agreements Act of 1979.

As to its first contention, Cheng Shin, in its capacity as a foreign manufacturer and exporter of the subject merchandise, arguably would have standing to bring this action as an "interested party" within the meaning of sections 516A(a)(2)(A), 516A(d) and 771(9)(A) of the Trade Agreements Act of 1979, 19 U.S.C. §§ 1516a(a)(2)(A), 1516a(d) and 1677(9)(A) (Supp. IV 1980), respectively. However, in this court's remand in the *Carlisle* case it was made clear that in view of the transitional rules of the Trade Agreements Act of 1979, the law in effect prior to enactment of that Act would apply in the reopened investigation. Those transitional rules provide, first, that the Trade Agreements Act shall not apply to actions such as the *Carlisle* case which were commenced before the effective date of that Act.[1] Second, section 1002(b)(2) of those rules directs that the law in effect on the date of a countervailing duty determination be applied in any action in this court contesting that determination.[2]

■ In its remand the court directed that the countervailing duty investigation be reopened solely for the limited purpose of determining the amount of the *ad valorem* benefit provided Taiwanese bicycle tire and tube manufacturers. The remainder of the determination was left undisturbed. Thus, the redetermination of which Cheng Shin complains merely represents a modification of the final determination issued under the former law. It is one of the last links in an unbroken chain of administrative and judicial proceedings. The countervailing duty provisions of the Trade Agreements Act of 1979, therefore, are inapplicable to the ITA's redetermination which Cheng Shin challenges here. Jurisdiction on the basis of the Trade Agreements Act of 1979 must, accordingly, fail.

■ Cheng Shin's alternative jurisdictional ground is similarly unavailing. It alleges jurisdiction under 28 U.S.C. §§ 1581(i) and 2631(i)[3] of the Customs Courts Act of 1980. The threshold question here, however, is not whether the jurisdictional provisions of 28 U.S.C. § 1581(i) are applicable, but rather whether Cheng Shin has the requisite standing under 28 U.S.C. § 2631(i). The court concludes that it does not.

As previously noted, the redetermination and order of which Cheng Shin complains are governed by the law in effect prior to

1. Section 1002(b)(1)(B) of the Trade Agreements Act of 1979, 93 Stat. 307, provides:
    (b) TRANSITIONAL RULES.—
    (1) CERTAIN PROTESTS, PETITIONS, ACTIONS, ETC.—The amendments made by this title shall not apply with respect to—
    \* \* \* \* \* \*
    (B) any civil action commenced before the effective date under section 2632 of title 28 of the United States Code; . . .

2. Section 1002(b)(2) of the Trade Agreements Act of 1979, 93 Stat. 307, provides:
    (2) LAW TO BE APPLIED FOR PURPOSES OF SUCH ACTIONS.—Notwithstanding the . . . amendment of section 303 of the Tariff Act of 1930 by section 103 of this Act, the law in effect on the date of any finding or determination contested in a civil action described in subparagraph (A), (B), or (C) of paragraph (1) [section 1002(b)(1)(A), (B), or (C)] shall be applied for purposes of that action.

3. 28 U.S.C. § 1581(i) provides:
    In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
    (1) revenue from imports or tonnage;
    (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
    (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
    (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.
    28 U.S.C. § 2631(i) provides:
    Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5 [the Administrative Procedure Act].

the enactment of the Trade Agreements Act of 1979. Under the former law Congress gave three classes of persons standing to contest a countervailing duty determination: (1) American manufacturers and wholesalers, (2) importers, and (3) consignees of the subject merchandise. See 19 U.S.C. §§ 1514, 1516 (1976).[4] Foreign manufacturers and exporters were not accorded the right to protest such determinations.

The legislative history of the Trade Agreements Act of 1979 again makes clear that under the former law Congress extended standing to challenge countervailing duty determinations to the above classes of persons to the exclusion of all other classes or groups. Thus, the Senate Finance Committee reported the following:

*Present law.*—Pursuant to present law, judicial review of countervailing and antidumping duty determinations can be obtained in several different ways. Importers may challenge antidumping and countervailing duty determinations after a duty has been imposed upon an entry of merchandise by filing a protest pursuant to section 514 of the Tariff Act of 1930 (19 U.S.C. 1514) and, upon denial of the protest in whole or in part under section 515 of the Tariff Act of 1930 (19 U.S.C. 1515), they may institute suit in the Customs Court pursuant to section 1582(a) of title 28 of the United States Code.

American manufacturers, producers and wholesalers may challenge the failure to impose a countervailing duty by following the procedures contained in 19 U.S.C. 1516(a), (b), and (c) ....

\* \* \* \* \* \*

*The bill.*—Section 1001(a) of the bill would provide for the review of determinations relating to countervailing and antidumping duties by adding a new section 516A to the Tariff Act of 1930....

*Persons entitled to institute suit and to participate in the litigation.*—Section 516A would provide that a suit may be instituted by any "interested party". The term "interested party" is defined by subparagraph (f)(3) of the new section 516A to include (1) a foreign manufacturer, producer, or exporter, or the United States importer of merchandise which was the subject of the investigation which led to the challenged determination, ...

S.Rep. No. 249, 96th Cong., 1st Sess. 245–46 (1979), U.S.Code Cong. & Admin:News 1979, p. 381, 631.

From what has been said it is apparent that foreign manufacturers, such as Cheng Shin, lacked standing to challenge countervailing duty determinations under the law in effect prior to enactment of the Trade Agreements Act of 1979.

■ What is more, 28 U.S.C. § 2631(i), which incorporates by reference section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, does not afford an implied grant of subject matter jurisdiction permitting, without more, judicial review of agency action. *See Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). As the Third Circuit observed in *Davis v. Romney,* 490 F.2d 1360, 1364 (1974), in construing section 702 of the Administrative Procedure Act, "where administrative action is challenged as violative of a statute, federal courts must ascertain whether Congress has prohibited or provided for 'review at the behest of the plaintiff' [citation omitted]." Here, as demonstrated above, Congress has

---

**4.** 19 U.S.C. § 1514(b)(1) (1976) provided in part:

[P]rotests may be filed by the importer, consignee, or any authorized agent of the person paying any charge or exaction, or filing any claim for drawback, or seeking entry or delivery, with respect to merchandise which is the subject of a decision in subsection (a) of this section.

19 U.S.C. § 1516(d) (1976) provided in part:
(d) Within 30 days after a determination by the Secretary—

\* \* \* \* \* \*

(2) under section 1303 of this title that a bounty or grant is not being paid or bestowed,
an American manufacturer, producer, or wholesaler of merchandise of the same class or kind as that described in such determination may file with the Secretary a written notice of a desire to contest such determination.

**688**

not so provided. See also *In the Matter of N.C. Trading,* 66 CCPA 11, C.A.D. 1215, 586 F.2d 221 (1978); *Hancock Gross Mfg., Inc. v. United States,* 75 Cust.Ct. 188, 190, C.R.D. 75-6, 400 F.Supp. 813, 815 (1975).

### Conclusion

In summary, unlike American manufacturers, importers or consignees, Cheng Shin had no statutory right under the law in effect prior to enactment of the Trade Agreements Act of 1979 to participate in the administrative proceedings which culminated in the affirmative countervailing duty order, nor was it authorized by Congress to initiate judicial proceedings to contest that order. And since Congress had prior to the Trade Agreements Act of 1979 circumscribed the class of persons with standing to seek judicial review of agency determinations, to the exclusion of foreign manufacturers, Cheng Shin, as such a manufacturer, was not a "person adversely affected or aggrieved by agency action" within the meaning of 28 U.S.C. § 2631(i).

For these reasons, defendant's motion to dismiss is granted.